IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| WRIGHT SOLUTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. CBD-12-178 |
| ) | |
| ROCKY WRIGHT, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Before this Court is Plaintiff Wright Solutions, Inc.'s Motion For Summary Judgment (ECF No. 43) ("Plaintiff's Motion") and Defendant Rocky Wright's Motion for Partial Summary Judgment (ECF No. 54) ("Defendant's Motion"). The Court has reviewed Plaintiff's Motion, Defendant's Motion, related memoranda, and applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court DENIES Plaintiff's Motion and GRANTS IN PART and DENIES IN PART Defendant's Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

In its Complaint, Plaintiff alleges that Defendant is liable for breach of contract, detrimental reliance, and fraud resulting from a series of three agreements made in 2011. Am. Compl. ¶¶ 27-75 (ECF No. 15). These three agreements were reached during and subsequent to an earlier case involving the parties, *Wright et al., v. The Payer Player LLC, et al.*, No. 10-cv-01161 (D. Md.). The earlier case was resolved with an Order of Judgment in favor of plaintiffs Calvert Wright and Wright Solutions in the amount of $1,013,943.25 plus attorneys' fees. *Id.* (ECF No. 42). The defendants in that case were three technology companies who had received

loans from Plaintiff. Defendant Rocky Wright was involved in the technology companies either as an owner, partner, or employee, although the parties dispute the extent of his involvement and whether he was personally liable for the judgment. Pl.'s Br. 4-5; Def.'s Br. 1-5. Plaintiff and Defendant share no family relationship despite their common surname. Def.'s Aff. Ex. 2 (ECF No. 34).

The following facts are undisputed: While the earlier case was still ongoing, Plaintiff and Defendant negotiated a business relationship to help Plaintiff recoup its losses from the unpaid loans. Pl.'s Br. 6; Def.'s Br. 5-6. The parties entered into a two-part written agreement on January 24, 2011 ("the Agreement"), and on January 28, 2011 ("the Licensing Agreement"). Pl.'s Br. 6; Def.'s Br. 6. The parties later signed two addendums on May 19, 2011 ("First Addendum"), and on October 13, 2011 ("Second Addendum"). Pl.'s Br. 7-8; Def.'s Br. 8-12. Meanwhile, the earlier case was reduced to judgment on April 27, 2011. Pl.'s Br. 5; Def.'s Br. 5. In the Agreement, Defendant agreed to develop code for a technology which Plaintiff would market and sell; in exchange, Plaintiff would forgive the debt owed by the three technology companies from the earlier case. Pl.'s Br. 6; Def.'s Br. 5-8. In the First Addendum, the parties agreed that instead of providing the originally agreed-upon code, Defendant would provide "Qubeey" technology, a browser-free internet viewing platform which he had been developing. Pl.'s Br. 7; Def.'s Br. 8-9. The Qubeey technology operates through the use of "Qubeey channels," which are tools akin to a website used to communicate with people who "follow" the channels. Pl.'s Br. 6; Def.'s Br. 8. In the Second Addendum, Defendant agreed to build an "integrated analytic engine" feature into the Qubeey technology, which would provide statistics regarding access and use of the channels. Pl.'s Br. 8-9; Def.'s Br. 11-12.

The parties' primary dispute is whether Defendant breached the Agreement and subsequent Addendums by failing to provide functional Qubeey technology and an integrated analytic engine.  Pl.'s Br. 10-13.  Defendant argues that he fully met his obligations and that Plaintiff filed suit instead of allowing Defendant to demonstrate that the product was functional and complete.  Def.'s Br. 13-17.  Further, the parties dispute whether Defendant fraudulently informed Plaintiff that his prior technology companies were insolvent to prevent it from pursuing its judgment.  Pl.'s Br. 17-19; Def.'s Br. 20-22.  Finally, the parties dispute whether Plaintiff justifiably and reasonably relied to its detriment on Defendant's promises to provide Qubeey technology.  Pl.'s Br. 13-16; Def.'s Br. 26-35.

## **ANALYSIS**

Rule 56 of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party is entitled to summary judgment when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court views "facts and reasonable inferences in the light most favorable to the non-moving party."  *Dulaney v. Packaging Corp. of America*, 673 F.3d 323, 330 (4th Cir. 2012); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party."  *Dulaney*, 673 F.3d at 330 (citing *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996)).

The parties cross-move for summary judgment on each count of Plaintiff's amended complaint: breach of contract, fraud, and detrimental reliance. Further, Defendant alleges that Plaintiff's Motion must be denied in its entirety because Plaintiff failed to support the motion with admissible evidence. Def.'s Br. 36-39.

**I.      The Court may not consider unsworn, unauthenticated exhibits, but Plaintiff's Motion need not be denied in its entirety because of its reliance on such exhibits.**

Defendant argues that because the majority of the exhibits attached to Plaintiff's Motion are inadmissible and not authenticated, it must be denied. Def.'s Br. 37. As an initial matter, a court is not required to deny a motion for summary judgment merely because of the lack of supporting affidavits or other similar materials. Federal Rule of Civil Procedure 56(e) states that if a party fails to properly support an assertion of fact, the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

In the Fourth Circuit, a court may not consider unauthenticated, unsworn documents on a motion for summary judgment. *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993); *see generally Sook Yoon v. Sebelius*, No. 08-3173, 2010 WL 4293513 (D. Md. Nov. 1, 2010); *Tillery v. Borden*, No. 07-1092, 2010 WL 2132226 (D. Md. May 25, 2010). Rule 56 is not unduly rigid— evidence appropriate for summary judgment need not be in a form that would be admissible at trial. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). However, the party relying on the exhibit must "introduce evidence sufficient to support a finding that the document is what the proponent claims." *Stanley Martin Cos. v. Universal Forest Prods. Shoffner*, 396 F. Supp. 2d 606, 613 (D. Md. 2005). Although a party not bearing the burden of

4

proof may be entitled to summary judgment without introducing affidavits or other similar supporting materials, a party bearing that burden cannot meet it without sufficiently authenticated evidence. *See Carr v. Deeds*, 453 F.3d 593, 608 (4th Cir. 2006) (citing *Celotex*, 477 U.S. at 323-25).

Here, Plaintiff is the party that would bear the burden of proof at trial. Plaintiff's Motion contains a host of attached exhibits (such as emails and letters) which are not incorporated into a sworn affidavit or deposition, and are therefore not sufficiently authenticated. The Court cannot consider these exhibits in evaluating Plaintiff's Motion. In the past, this Court has allowed litigants the chance to resubmit motions for summary judgment when based on similarly unsworn evidence. *See Sook Yoon*, 2010 WL 4293513, at *5, *Tillery*, No. 2010 WL 2132226, at *6. It does not take that step here because even if Plaintiff sufficiently authenticated all of its exhibits, Defendant's authenticated evidence raises a genuine and material dispute of fact. As permitted by Rule 56(e), the Court will proceed while considering only the sufficiently authenticated evidence.

II. **A genuine question of material fact exists as to whether Defendant breached the Agreement and Addendums by failing to provide functional Qubeey technology.**

Plaintiff argues that there is no genuine dispute of fact as to whether Defendant breached the contract by failing to provide functional Qubeey technology, while Defendant argues that Plaintiff will be unable to prove such a breach. Pl.'s Br. 12; Def.'s Br. 16. "A breach of contract is a failure without legal excuse to perform any promise which forms the whole or part of a contract." *Duncan Services, Inc. v. ExxonMobil Oil Corp.*, 722 F. Supp. 2d 640, 647 (D. Md. 2010) (quoting *Weiss v. Sheet Metal Fabricators, Inc.*, 110 A.2d 671, 675 (Md. 1955)). While any breach of a contract may give rise to a cause of action for damages, only a material breach excuses the non-breaching party's duty to perform. *Jay Dee/Mole Joint Venture v. Mayor of*

5

*Baltimore*, 725 F. Supp. 2d 513, 526 (D. Md. 2010); *Barufaldi v. Ocean City Chamber of Commerce*, 7 A.3d 643, 656 (Md. Ct. Spec. App. 2010).  A breach is material where it renders any subsequent performance "different in substance from that which was contracted for," or where it alters the purpose of the contract in a vital way.  *Jay/Dee Mole*, 725 F. Supp. 2d at 516; *Barufaldi*, 7 A.3d at 656 (internal quotation marks omitted).  Ordinarily, it is a question of fact whether or not a breach is material.  *Barufaldi*, 7 A.3d at 656-57.

Plaintiff treated Defendant's actions as a material breach by ceasing performance and filing suit before the time for performance contemplated by the parties had elapsed.[1]  *See* Def.'s Br. Ex. 5(F).  Therefore, the burden is on Plaintiff to establish that Defendant's actions failed to comport with the bargained-for performance in a vital way.  In support of its assertion, Plaintiff offers the affidavit of its employee Wesley Samuel.  Pl.'s Br. Ex. 10.  Mr. Samuel stated that the Qubeey technology delivered by Defendant contained only graphical representations or "skins," that the tabs and buttons did not work, and that the analytics mechanism did not work.[2]  *Id*.

Defendant claims that it is entitled to summary judgment because Plaintiff cannot produce evidence to establish that the analytic engine was not integrated into the Qubeey technology.  Def.'s Br. 16.  According to Defendant, the only relevant issue is whether the analytic engine was integrated, not whether it was functioning properly.  *Id*.  Defendant relies on a separate affidavit of Mr. Samuel stating that the analytic engine had been integrated into the

---

[1] The original Licensing Agreement between the parties, entered into on January 28, 2011, referred to a five-year term during which Plaintiff would market and sell Defendant's technology, which could be extended if necessary for Plaintiff to fully recoup the judgment in the earlier case. Def.'s Br. Ex. 5(B) ¶ 3.1. The Second Addendum entered into by the parties, on October 13, 2011, gave Defendant sixty days to produce Qubeey technology with a functioning analytic engine. Def.'s Br. Ex. 5(E) ¶ 1. As the Court will address *infra* in Section III, the Second Addendum required Defendant to complete certain elements of his performance within the sixty-day period. Nonetheless, Plaintiff's cessation of its own performance by filing suit one year into the contract could only be excused if Defendant committed a material breach.

[2] Plaintiff also relies on emails by unidentified Qubeey employees, which arguably suggest that it was not possible to integrate the analytic engine into the Qubeey technology. Pl.'s Br. 12. However, as discussed above these emails were not authenticated and cannot be considered.

6

"Calvert Qubeey channels," but did not see that it was functioning properly. Def.'s Br. Ex. 6. In his own affidavit, Defendant states that the analytic engine was integrated into each of the channels. Def.'s Br. Ex. 4. Further, Defendant refers to excerpts from the deposition of Plaintiff's chief of operations and part owner, Calvert Wright, who testified that he did not himself test the analytic engine and instead relied on Mr. Samuel. Def.'s Br. Ex. 8, Wright Dep. 337-38.

Plaintiff responded to Defendant's Motion with additional evidence from the deposition of its director, Calvert Wright.[3] Pl.'s Opp. Br. 10 (ECF No. 55). In the deposition, Mr. Wright states that some of the Qubeey channels Defendant provided were mere graphics lacking in functionality, and that the analytic engine was not integrated. Pl.'s Opp. Br. Ex. 9, Wright Dep. 122, 263. Plaintiff also restated the evidence from the affidavit of Wesley Samuel which it provided in its own motion. Pl.'s Opp. Br. 10.

The evidence demonstrates that there is a genuine factual dispute as to whether Defendant complied with the Agreement and Addendums by providing functional Qubeey channels with integrated analytic engines. Although Defendant asserts that only the integration of the analytic engine is relevant and not its functionality, the Second Addendum attached as an exhibit by both parties (and authenticated by Defendant's affidavit) states that Defendant "will provide an integrated analytic engine for each of the Qubeey Channel [sic] he has already built" and that the engine "shall be complete, integrated and functional into the Qubeey Channel." Def.'s Br. Ex. 5(E). Therefore, Plaintiff's evidence that Defendant did not integrate a functioning analytic engine into *each* Qubeey channel raises a genuine issue of material fact.

---

[3] Unlike in its motion for summary judgment, Plaintiff's opposition to Defendant's Motion included authenticated and sworn copies of the deposition of Calvert Wright. Pl.'s Opp. Br. Ex. 9.

7

Finally, Defendant argues that it is entitled to summary judgment because Plaintiff did not provide sufficient evidence that it sustained damages from Defendant's breach. Def.'s Br. 17-19. Failure to prove damages is not a proper reason for granting summary judgment in an action for breach of contract. A plaintiff who successfully establishes a breach of contract is entitled to nominal damages even if actual damages cannot be proven. *PFB, LLC v. Trabich*, 304 F. App'x 227, 228 (4th Cir. 2008); *Stueber v. Arrowhead Farm Estates Ltd. P'ship*, 519 A.2d 816, 818 (Md. Ct. Spec. App. 1987). Therefore, the Court cannot grant summary judgment on this basis and does not evaluate the sufficiency of Plaintiff's evidence of damages.

### III. A genuine dispute of fact exists as to whether Plaintiff detrimentally relied on Defendant's promise to produce functional Qubeey technology, but the claim is moot if the Court finds an enforceable contract.

Plaintiff has moved for summary judgment on a separate count of detrimental reliance. Pl.'s Br. 13-16. Detrimental reliance, also known as promissory estoppel, allows a party to seek relief under a contract which is rendered unenforceable by lack of consideration, the statute of frauds, or some other defense. *See Suburban Hosp., Inc. v. Sampson*, 807 F. Supp. 31, 33 (D. Md. 1992)*; Pavel Enters. v. A.S. Johnson Co.*, 674 A.2d 521, 531-32 (Md. 1996). Maryland courts apply the following four-part test to determine whether promissory estoppel applies:

> (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise.

*Pavel*, 674 A.2d at 532. As to the fourth element, the plaintiff is required to prove some damages or harm, in contrast to an action for breach of contract. *See havePower, LLC v. General Elec. Co.*, 256 F. Supp. 2d 402, 410-12 (D. Md. 2003).

A party may bring an action seeking both breach of contract and promissory estoppel, because if the court finds that the contract is unenforceable it may nonetheless provide relief

based on detrimental reliance.  *See Suburban Hosp.*, 807 F. Supp. at 33; 28 Am. Jur. 2d *Estoppel and Waiver* § 54 (2013).  However, a claim for promissory estoppel or detrimental reliance is moot when there is no dispute as to the existence of an enforceable contract.  *Jay Dee/Mole Joint Venture v. Mayor of Baltimore*, 725 F. Supp. 2d 513, 531-32 (D. Md. 2010); *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Group, Inc.*, 299 F. Supp. 2d 505, 523 (D. Md. 2004); *Holland v. Psychological Assessment Res., Inc.*, No. 04-437, 2004 WL 1368873, at *3 (D. Md. June 16, 2004).  Promissory estoppel does not provide a cause of action or source of recovery independent from a breach of contract claim.  *Suburban Hosp.*, 807 F. Supp. at 33.

Defendant's Motion does not argue that the Agreement or subsequent Addendums is unenforceable.  Nonetheless, the Court will not yet rule the promissory estoppel claim to be moot because of the possibility that Defendant might raise such a defense at trial.[4]  If the Court finds that the parties' Agreements are enforceable, Plaintiff would not be entitled to any relief separate from its cause of action for breach of contract.  *Jay Dee/Mole*, 725 F. Supp. 2d at 532; *Harte-Hanks*, 299 F. Supp. 2d at 523; *Suburban Hosp.*, 807 F. Supp. at 33.

In support of its motion for summary judgment, Plaintiff makes largely unsupported factual assertions that it detrimentally relied on Defendant's promise to produce Qubeey channels with a functioning analytic engine.  Pl.'s Br. 13-16.  Plaintiff mentions, without factual support, two meetings in which it tried to sell Qubeey channels to prospective clients during which the technology did not function properly.  Pl.'s Br. 14-15.  The lack of supporting documents or affidavits precludes Plaintiff from carrying its burden of eliminating any genuine dispute of fact.

---

[4] Defendant's answer to Plaintiff's amended complaint included contractual defenses such as lack of consideration.  Answer ¶¶ 61-71 (ECF No. 21).

In cross-moving for summary judgment, Defendant argues that Plaintiff cannot establish that its reliance was reasonable because it prematurely filed its lawsuit before Defendant's time for performance had elapsed, failed to take reasonable steps to cure the problem, failed to make a good faith attempt to sell the channels, and did not suffer a detriment. Def.'s Br. 26-35. Defendant states that because the original Agreement contemplated a "five year term," it was unreasonable to file this lawsuit only five months after Defendant provided the first iteration of the technology and one year after entering into the Agreement. Def.'s Br. 27. Defendant also states that Plaintiff acted unreasonably by refusing Defendant's attempts to demonstrate the product's functionality. Def.'s Br. 28-31.

In response, Plaintiff cites to the written Addendums in which Defendant agreed to provide Qubeey channels with a functioning analytic engine. Pl.'s Opp. Br. 10, Ex. 11, 16. The Court finds that the Addendums are sufficient for Plaintiff to raise a question of fact as to whether Defendant made a clear and definite promise with the reasonable expectation of producing action or forbearance. As to justifiable reliance and detriment, there is a genuine question of fact raised by the affidavit of Wesley Samuels, who testified that the technology delivered by Defendant was not functional and hampered Plaintiff's ability to sell the product. Pl.'s Opp. Br. Ex. 10. As to the time for performance, the Second Addendum requires Defendant to produce a functioning analytic engine within sixty days of October 13, 2011. Pl.'s Opp. Br. Ex. 16. The same clause requires that the analytic engine be integrated into Qubeey channels that are customized for Plaintiff and "functional and appropriate for sale." *Id*. This lawsuit was filed by Plaintiff in state court on December 19, 2011, which is after the sixty-day period had elapsed. Notice of Removal ¶ 1. Therefore, it is not premature.

10

Defendant's final argument is that by seeking extensive damages for "lost business opportunities," Plaintiff failed to seek the only available relief under a theory of promissory estoppel, which is "enforcement of the promise." Def.'s Br. 35. The Restatement (from which Maryland courts derived the promissory estoppel test) states that a promise enforced by promissory estoppel is "a contract, and full-scale enforcement by normal remedies is often appropriate." Restatement (Second) of Contracts § 90 (1981); *see also Sedghi v. PatchLink Corp.*, 823 F. Supp. 2d 298, 306 (D. Md. 2011); *Maryland Transp. Auth. Police Lodge No. 34 of Fraternal Order of Police, Inc. v. Maryland Transp. Auth.*, 5 A.3d 1174, 1227 (Md. Ct. Spec. App. 2010), *rev'd on other grounds sub nom. Maryland Transp. Auth. v. Maryland Transp. Auth. Police Lodge No. 34 of Fraternal Order of Police*, 21 A.3d 1098 (Md. 2011). However, the Fourth Circuit has held that "[d]amages recoverable under a claim of detrimental reliance are carefully circumscribed; the plaintiff may recover only those specific expenditures made in reliance upon the defendant's promise." *RCM Supply Co. v. Hunter Douglas, Inc.*, 686 F.2d 1074, 1079 (4th Cir. 1982); *Sherlock v. Lockheed Martin Corp.*, No. 01–254, 2004 WL 3681614, at *8 (D. Md. Feb. 26, 2004). *But see Sedghi*, 823 F. Supp. 2d at 306 (stating that this limitation only "sometimes" applies). The plaintiff is typically not entitled to damages based on lost profits. *Abt Associates, Inc. v. JHPIEGO Corp.*, 104 F. Supp. 2d 523, 536 (D. Md. 2000), *aff'd*, 9 F. App'x 172 (4th Cir. 2001).

Plaintiff's amended complaint seeks extensive damages for "lost business opportunities" far exceeding the value of the debt which the Agreement was intended to recover. Am. Compl. ¶ 75. Defendant is correct in asserting that Plaintiff is most likely unable to recover these lost profits under a theory of promissory estoppel. Nonetheless, construing the facts in the light most favorable to Plaintiff, there is a question of fact as to whether it suffered some out-of-pocket or

otherwise compensable damages when it relied on Defendant's promise and attempted to sell a deficient product.  Therefore, the detrimental reliance claim cannot be fully dismissed on this basis.  Defendant's cross-motion for summary judgment on Plaintiff's detrimental reliance claim will be denied.

**IV.   Defendant is entitled to summary judgment on Plaintiff's fraud claim because there is insufficient evidence that Defendant falsely represented the insolvency of his prior companies and that Plaintiff justifiably relied on such a statement.**

Plaintiff claims that there is no genuine issue of material fact that Defendant misrepresented the insolvency of the technology companies from the earlier lawsuit and that it was fraudulently induced into not pursuing the judgment it was granted.  Pl.'s Br. 16-19. Plaintiff is not claiming fraud as a contractual defense, but rather seeking damages in tort for the alleged misrepresentation.  Defendant responds that there is no evidence that he ever made the alleged statement, that the statement was false, or that Plaintiff reasonably and justifiably relied on it.  Def.'s Br. 22-26.

In order to prevail in a claim for fraud under Maryland law, the plaintiff must establish:

(1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Edell & Associates, P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 444-45 (4th Cir. 2001) (citing *Nails v. S & R, Inc.*, 639 A.2d 660, 668 (Md. 1994); *Dixon v. Process Corp.*, 382 A.2d 893, 900 (Md. Ct. Spec. App. 1978)).  To be actionable, the misrepresentation must have been one of material fact.  *Parker v. Columbia Bank*, 604 A.2d 521, 528 (Md. Ct. Spec. App. 1992).  To establish reliance on the misrepresentation, the plaintiff must show that he or she would have acted differently but for the representation.  *Dynacorp Ltd. v. Aramtel Ltd.*, 56 A.3d

631, 667 (Md. 2012). *But see Sass v. Andrew*, 832 A.2d 247, 267 (Md. Ct. Spec. App. 2003) (stating that the misrepresentation need only substantially induce the plaintiff to act). A misrepresentation will not be found if the party to whom it was made knew the actual facts or could reasonably have ascertained them. *Sass*, 832 A.2d at 266; *McGraw v. Loyola Ford, Inc.*, 723 A.2d 502, 515 (Md. Ct. Spec. App. 1999).

Fraud claims are subject to a heightened "clear and convincing" evidentiary standard. *Edell*, 264 F.3d at 444; *Dixon*, 382 A.2d at 900. On a motion for summary judgment, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability" under the substantive evidentiary standard. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). The judge must view the evidence "through the prism" of the evidentiary burden that the party would face at trial. *Id.* at 254; *City of Virginia Beach v. U.S. Dept. of Commerce*, 995 F.2d 1247, 1252 (4th Cir. 1993). Therefore, the Court must consider whether a fair-minded jury could find that Plaintiff has proven the fraud clearly and convincingly. *See Anderson*, 477 U.S. at 252. Further, a party who does not bear the burden of proof may be granted summary judgment by showing that the adverse party cannot produce admissible evidence to support an essential fact. Fed. R. Civ. Proc. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A moving party who does not bear the burden of proof may be granted summary judgment if "there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325; *Carr v. Deeds*, 453 F.3d 593, 608 (4th Cir. 2006).

Plaintiff has not provided sufficient evidence that Defendant made a false representation regarding the solvency of his prior technology companies. Its brief cites to an email written by Defendant, which even if it were authenticated makes no mention of the insolvency or financial health of the companies. Pl.'s Br. 17; Ex. 6. The only mention of the companies' insolvency

comes in the Agreement signed by the parties on January 24, 2011.  Pl.'s Br. Ex. 7; Def.'s Br. Ex. 5(A).  There is no indication in the Agreement that this information was specifically provided by Defendant.  To establish that the alleged statement was false, Plaintiff provides documentation from Defendant's United States Bankruptcy Court proceedings showing that Defendant received 360,000 dollars of income from the companies in 2011.  Pl.'s Br. 18.  However, insolvency is "having liabilities that exceed the value of assets; having stopped paying debts in the ordinary course of business or being unable to pay them as they fall due."  Black's Law Dictionary (9th ed. 2009).  Defendant's income alone does not establish that the companies were insolvent and Plaintiff provides no further evidence regarding their assets or liabilities.

As to justifiable reliance, Plaintiff states only that Defendant was the majority shareholder of the technology companies and makes no references to any steps taken to verify the insolvency of the companies.  Pl.'s Br. 18.  As to damages, Plaintiff states in conclusory fashion, without citing evidence, that but for Defendant's misrepresentation it would not have entered into the Agreement underlying this lawsuit and would have instead pursued its prior judgment.  Pl.'s Br. 18-19.

Defendant's cross-motion for summary judgment cites to several portions of the deposition of Plaintiff's chief of operations, Calvert Wright.  Def.'s Br. 20-21.  Wright testified that he has no reason to believe that the companies were in fact solvent and operational, and that he conducted an assets search of the companies and found no assets.  Def.'s Br. Ex. 8, Wright Dep. 159-61.  Wright also testified that he has no reason to believe that Defendant was untruthful when he represented that the companies were insolvent.  *Id*. at 367.  Finally, Wright testified that Defendant made the representation about insolvency after the judgment in the earlier case was

entered, which was four months after the initial Agreement between the parties. *Id.* at 99, 104. Therefore, it is not possible that the Agreement was induced by the misrepresentation.

The Court is convinced that no reasonable fact-finder could find by clear and convincing evidence that Defendant made fraudulent statements regarding the insolvency of the technology companies. The only evidence that exists to suggest that Defendant made representations as to the insolvency of the technology companies relates to statements made after the relevant period. Plaintiff has not provided evidence to show that Defendant's alleged statement was materially false, because the fact that Defendant received income from the companies in 2011 can be consistent with them being insolvent. The deposition of Plaintiff's chief of operations indicates that Plaintiff either knew the truth about the companies' financial affairs or failed to reasonably investigate. Finally, Plaintiff's claim of injury is undermined by its failure to produce evidence that the companies possessed any assets.

In Plaintiff's response to Defendant's Motion, it for the first time alleged that other statements Defendant made regarding the Qubeey technology and the analytic engine were fraudulent. Pl.'s Opp. Br. 13-16. Plaintiff argues that Defendant knew that he lacked the ability to produce this technology at the time he promised to do so in the First and Second Addendums to their contract. *Id.* Mere predictions or statements which are promissory in nature are not actionable as fraud. *Miller v. Fairchild Indus., Inc.*, 629 A.2d 1293, 1302 (Md. Ct. Spec. App. 1993). The simple failure to perform a contract does not give rise to a claim for fraud. *Kwang Dong Pharm. Co. v. Han*, 205 F. Supp. 2d 489, 495 (D. Md. 2002). However, promises or predictions made with the "present intention not to perform" may be actionable as fraud if they relate to matters within the declarant's exclusive control. *Dierker v. Eagle Nat. Bank*, 888 F. Supp. 2d 645, 652 (D. Md. 2012); *Miller*, 629 A.2d at 1302.

To support its claim that Defendant lacked present intent to perform the contract, Plaintiff cites to emails exchanged by Defendant's employees which as discussed above were never authenticated and cannot be considered by the Court. *See supra* Section II n. 2. Therefore, they fail to raise a material question of fact as to Plaintiff's fraud claim. Even if they had been authenticated, they do not provide evidence of Defendant's intent to perform at the relevant time period. Defendant was not the writer or recipient of any of the emails but was merely copied or "cc'd" on them. Pl.'s Br. Ex. 19-20. Therefore, Plaintiff interprets the emails as putting Defendant on notice that he was unable to integrate an analytic engine into the Qubeey channels at the time he agreed to the Addendums. Pl.'s Opp. Br. 14. However, the emails were exchanged in December of 2011, several months after Defendant agreed to the two Addendums. Further, Plaintiff's interpretation of the content of the emails is quite strained.[5] No reasonable juror could find that they support a claim of fraud by clear and convincing evidence. Defendant is entitled to summary judgment on the fraud claim because of the "absence of evidence" that he made a false representation and that Plaintiff justifiably relied on it. *Celotex*, 477 U.S. at 325; *Carr*, 453 at 608.

---

[5] In the emails, one employee states, "I think for the above stats I can not implement inside channel itself, please let me know so that I can start this weekend and can complete more and more channel [sic]." Pl.'s Br. Ex. 19. Another employee responds, "You and I discussed this before and you said it would be difficult to do from inside the channel so I wrote it in the qube." Pl.'s Br. Ex. 20. Defendant is cc'd on both emails.

## **CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiff's Motion, and DENIES IN PART and GRANTS IN PART Defendant's Motion.

 April 18, 2013                                                                                       /s/
                                                                                  Charles B. Day
                                                                                  United States Magistrate Judge

CBD/ISA